

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-7-2005

# Lolita v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1231

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Lolita v. Atty Gen USA" (2005). *2005 Decisions*. Paper 1470.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1470

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

<u>NOT PRECEDENTIAL</u>

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-1231

RIZMA LOLITA, "Lead";
MUHAMMAD IQBAL NURHAPY, "Husband";
ABEL VALENTINO RIZQUI NURHAPY, "Child,"

Petitioners

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

ON PETITION FOR REVIEW OF ORDERS OF THE
BOARD OF IMMIGRATION APPEALS

(Nos. A95-146-625; A95-146-626; A95-146-627)

Submitted Under Third Circuit LAR 34.1(a)
January 18, 2005

Before: ALITO, McKEE, and SMITH, <u>Circuit Judges</u>

(Filed March 7, 2005)

PER CURIAM:

Rizma Lolita petitions for review of an order by the Board of Immigration Appeals ("BIA") denying asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"). Because we write for the parties only, we do not set out the facts.

The BIA affirmed the order of the Immigration Judge ("IJ") without opinion, so we review the IJ's opinion. See Abdulai v. Ashcroft, 239 F.3d 542, 549 n.2 (3d Cir. 2001) (citations omitted). We must determine whether the IJ's opinion is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." See Balasubramanrim v. INS, 143 F.3d 157, 161 (3d Cir. 1998) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992)). The IJ's findings "must be upheld unless the evidence not only supports a contrary conclusion, but compels it." Abdille v. Ashcroft, 242 F.3d 477, 483-84 (3d Cir. 2001) (citation omitted).

This Court lacks jurisdiction to review the BIA's denial of asylum because the IJ found that this claim was time-barred. See Tarrawally v. Ashcroft, 338 F.3d 180, 185 (3d Cir. 2003) (citing 8 U.S.C. § 1158(a)(3)).

To succeed on her withholding of removal claim, Lolita had to show a "clear probability" that her life or freedom would be threatened because of her "race, religion, nationality, membership in a particular social group or political opinion" if she returned to

2

Indonesia.  See 8 U.S.C. § 1231(b)(3)(A); INS v. Stevic, 467 U.S. 407, 429-30 (1984).

The IJ found that she did not meet her burden for two reasons, both supported in the

record by substantial evidence.

First, the IJ held that Lolita did not prove she is an Adventist Christian.  Lolita's

marriage certificate, the most recent document submitted as evidence, states her religion

as "Moslem."  See Joint Appendix ("A") 364.  Lolita avers that she converted in name

only, in order to marry her husband.  However, she failed to present any corroborating

evidence, such as statements or testimony from fellow church members or clergy, to

support this claim.  In addition, she admitted during the hearing that she had not attended

church in the past three months.  A116.  Particularly when corroborative evidence from

disinterested parties should have been relatively easy to furnish, bare allegations by Lolita

and her husband do not compel the conclusion that Lolita is a Christian.

In any event, even if Lolita had demonstrated that she is a Christian, she did not

establish a "clear probability" that she would endure religious persecution if she returned

to Indonesia.  Nearly all of Lolita's evidence concerning religious upheaval in Indonesia

is limited to Ambon, a city in the Malukus island chain some 1600 miles west of Jakarta,

the city where Lolita was born, educated, and continued to live until she came to the

United States.  See A294-95.  Pointing to religious violence in one part of a country is

insufficient to demonstrate a clear probability of persecution in another part.  Cf.

Abdulrahman v. Ashcroft, 330 F.3d 587, 592 n.3 (3d Cir. 2003) (citing 8 C.F.R. §§

3

208.13(b)(1)(i) and (ii)).

Finally, Lolita argues that she is entitled to relief under the CAT because it is more likely than not that she would be tortured if removed to Indonesia. See 8 C.F.R. § 208.16(c)(2). The torture must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." See id. § 208.18(a)(1); Lukwago v. Ashcroft, 329 F.3d 157, 183 (3d Cir. 2003). As the IJ noted, Lolita failed to link any of her past persecution to government officials in any way. See A48. The incidents that Lolita alleges drove her from Indonesia apparently involved private citizens, and nothing in the record suggests the involvement or acquiescence of public officials or actors.[1]

Accordingly, Lolita's petition for review of the BIA's decision is denied.

---

[1]Lolita also claims that Khouzam v. Ashcroft, 361 F.3d 161 (2d Cir. 2004), lowers the level of government involvement required for CAT claims. See id. at 170 ("In terms of state action, torture requires only that government officials know of or remain willfully blind to an act and thereafter breach their legal responsibility to prevent it."). Even if this is true, we need not address the question because Lolita would not prevail under either standard.